UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY A. EULITT,<br><br>                          Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.<br><br>                          Defendants. | Case No.:  18-cv-02721-RBM-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING THE CITY'S MOTION TO STRIKE**<br><br>**(2) GRANTING THE CITY'S MOTION TO DISMISS**<br><br>**(3) DENYING PLAINTIFF'S MOTION TO STAY AND FOR APPOINTMENT OF COUNSEL**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[Docs. 100, 101, 102, 103]** |

Defendant City of San Diego ("Defendant" or "the City") has filed two motions: (1) a Motion to Strike Plaintiff's Fourth Amended Complaint ("4AC"); and (2) a Motion to

1

3:18-cv-02721-RBM-DEB

Dismiss Plaintiff's 4AC (Docs. 100, 101).  Plaintiff Sandy A. Eulitt ("Plaintiff"), proceeding pro se, did not oppose either of these motions but instead filed "conditional oppositions" arguing the Court should not consider the City's motions until her motions for class certification and appointment of counsel, filed after the City's motions, were ruled on. (Docs. 104–105.)  The City's reply briefs note Plaintiff's "conditional oppositions" do not comply with the requirements for an opposition to a motion and argue Plaintiff has waived opposition.  (Doc. 107 at 2–3; Doc. 108 at 2–3.[1])

Plaintiff has filed three motions: (1) Motion to Stay Proceedings (Doc. 102 at 1–5); (2) Motion for Appointment of Counsel (Doc. 102-2–102-5);[2] and (2) Motion to Certify Class.  (Doc. 103, 110 (supplement to motion improperly filed without leave of court a week after motion filing).)  The City has filed oppositions to each of Plaintiff's motions. (Docs. 106, 111.)  Plaintiff has filed reply briefs.  (Docs. 109–110, 112.)

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the Motion to Strike (Doc. 100) and Motion to Dismiss (Doc. 101) are **<u>GRANTED</u>**.  The Motion to Certify Class, Motion for Appointment of Counsel, and Motion to Stay are **<u>DENIED</u>**.

## I.   <u>BACKGROUND</u>

### A.   **Fourth Amended Complaint**

As discussed further below (*see infra* II.B), Plaintiff's 4AC fails to comply with Federal Rule of Civil Procedure 8's requirement of a "short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Despite dismissal on this basis as well as the lack of oppositions to the City's motions (*see infra* II.A), the Court

---

[1] The Court cites the paragraph numbers of the 4AC and the CM/ECF electronic pagination for all other cites to the record unless otherwise noted.

[2] The Motion to Appoint Counsel was filed and docketed with the Motion to Stay.  (Doc. 102.)

3:18-cv-02721-RBM-DEB

briefly summarizes some of the allegations of Plaintiff's lengthy 4AC for purposes of addressing the motions before the Court.

In the 4AC, Plaintiff alleges that "the City has unlawfully enforced a repealed 1942 ordinance—San Diego Ordinance 2584" ("O-2584") that Plaintiff refers to as the "six-month rule." (*Id.* ¶¶ 1–2, 118–122.)[3]  Plaintiff asserts that "[t]his policy, enforced at Coastal Trailer Villa Park [("CTV")] until its closure in 2019 and at Morena Mobile Village [("MMV")]), has forced vulnerable residents into repeated dislocation and instability, inflicting measurable financial, physical, and emotional harm." (*Id.* ¶ 2.)  Plaintiff alleges the six-month rule "is a discriminatory, outdated policy that disproportionately impacts people with disabilities and older adults—many of whom reside in older RVs excluded by vehicle age restrictions at other parks such as Santa Fe RV Park." (*Id.* ¶ 3.)  Plaintiff claims "the City has persisted in enforcing an invalid ordinance—knowingly or with deliberate indifference—placing Plaintiffs' health, safety, and housing security at risk." (*Id.* ¶ 5.)  "Plaintiff seeks injunctive and declaratory relief, along with damages, to end this unconstitutional and unlawful enforcement and to protect the rights of a vulnerable class pushed into the margins of San Diego's housing system." (*Id.* ¶ 6.)

Although Plaintiff's 4AC includes many allegations from years before, this litigation seems to originate from an October 31, 2016 "7-Day Notice to Comply" from CTV to Plaintiff that, in addition to "citing multiple alleged violations," included reference to Plaintiff "exceeding the six-month maximum occupancy period under Ordinance 2584." (*Id.* ¶¶ 68, 123.)  On June 29, 2018, "CTV filed an Unlawful Detainer action against

---

[3] The Court notes that the repeal of the ordinance was only raised in briefing before the Ninth Circuit Court of Appeals. *Eulitt v. City of San Diego*, No. 21-55920, 2024 WL 2350642, at *1 (9th Cir. May 23, 2024) ("For the first time on appeal, the City contends that it repealed the ordinance originating the Six-Month Rule in 1954, decades before the events alleged in [Plaintiff's] complaint.  Because the City's belated contention dramatically altered the nature of the issues on appeal, we vacate the district court's order and remand for the district court to consider these issues in the first instance.").

3:18-cv-02721-RBM-DEB

Plaintiff" with "supporting documents in that case explicitly cit[ing] Ordinance 2584 as the legal basis for eviction." (*Id.* ¶ 72.)  Plaintiff's 4AC includes a section that details her locations, moves as a result of the six-month rule, and her medical history from 2009 through 2021.  (*Id.* ¶¶ 230–278.)

Plaintiff "is a 62-year-old former resident of San Diego [that] suffers from a serious and multifaceted spinal condition, compounded by anxiety, depression, and gastrointestinal issues" that she blames on the "repeated forced relocations and legal threats surrounding enforcement of the 'six-month rule.'" (*Id.* ¶ 11.)  She alleges that, despite hiring movers, "she was repeatedly forced to perform physically demanding tasks during RV relocations—tasks that inflicted cumulative and sometimes catastrophic trauma to her spine. (*Id.* ¶ 12.)  She relies on a "fixed disability income" and asserts she "is a qualified individual with disabilities under the [ADA]" and § 504.  (*Id.* ¶¶ 11, 13.)

Plaintiff asserts that, based on redevelopment planning over 15 years, the City should have known that many of the individuals required to relocate because of the six-month rule were elderly or disabled and this was a "reckless and discriminatory policy under both state and federal law." (*Id.* ¶¶ 74, 77.)  Plaintiff points to San Diego's housing market being "chronically unaffordable for low income and disabled individuals" (*id.* ¶ 78) and a known shortfall of affordable homes, but also alleges generally that the lack of affordable housing "disproportionately affects individuals with disabilities and seniors on fixed incomes," as well as many residents of CTV.  (*Id.* at ¶¶ 78–79, 86–94, 104–111.)  Plaintiff also asserts that many individuals required to relocate as a result of enforcement of the six-month rule faced difficulties in parking their RVs on city streets because of municipal codes limiting where oversized vehicles can be parked and for how long, and that they could not relocate outside San Diego because the parks in neighboring communities like Lakeside, Santee, La Mesa, El Cajon, and Chula Vista, charge higher rents.  (*Id.* ¶¶ 78–85, 126, 133.) Plaintiff cites numerous articles about the hardships in moving for seniors and the disabled (*id.* ¶¶ 95–98) and asserts "these findings … confirm that [the City's] actions—repeatedly forcing elderly and disabled RV park residents to relocate—caused foreseeable,

disproportionate, and serious harm" (*id.* ¶ 99). Plaintiff then lists nine tasks associated with relocating an RV and asserts they are not just difficult, but dangerous to those with disabilities, and also points to the gap in time between having to pay a deposit at a new park and receiving a refund from the prior park. (*Id.* ¶¶ 112–117.)

Plaintiff asserts that "the City's long-standing policy of strictly enforcing the six-month rule at CTV, ignoring clear violations at MMV, and tolerating extended stays at Santa Fe RV Park demonstrates disparate treatment of similarly situated individuals and disproportionately burdened low-income and disabled residents." (*Id.* ¶ 127.) Plaintiff then references her own observations of mobile homes, as opposed to RVs, that stayed in MMV and CTV "indefinitely" (*id.* ¶ 128) and asserts the six-month rule was not enforced evenly among parks (*id.* ¶¶ 129–130). Plaintiff alleges this "pattern of inconsistent enforcement" created "a discriminatory effect on Plaintiff and similarly situated class members" and "reveals arbitrary and discriminatory application under color of law, in violation of the Equal Protection Clause." (*Id.* ¶¶ 131–132, 198 (describing the City's "failure to evaluate the legality of its enforcement tools, i.e. repealed O-2584, combined with selective application across different parks and disregard for protected populations, reflects a municipal pattern and practice of discriminatory treatment.").) Plaintiff also alleges that the closure of CTV in 2019 precluded the prior practice of RV residents rotating between the parks every six months and forced many to park on public streets because other parks were more expensive than MMV and CTV and they had no affordable place to relocate. (*Id.* ¶¶ 121, 129.)

Plaintiff seems to then allege the City must have known she had received a reasonable accommodation from CTV because "to have acquired the names and space numbers of the occupants of CTV listed in the June, 2017 letter,"[4] the City must have "accessed each tenant's file, held at CTV or RG Investment office." (*Id.* ¶¶ 169–177.)

---

[4] Among almost 400 pages of exhibits attached to Plaintiff's 4AC is a letter dated June 22, 2017 from the City Attorney's Office to counsel for CTV that identifies Plaintiff, along

3:18-cv-02721-RBM-DEB

Plaintiff also asserts that: a planned redevelopment to build higher density housing motivated the removal of tenants from CTV (*id.* ¶¶ 138–147); the Safe Parking program operated by Jewish Family Service did not adequately accommodate displaced RV residents (*id.* ¶¶ 148–153); and the City failed to inform residents of CTV or MMV they could request a reasonable accommodation to remain in the parks or avoid ticketing once displaced (*id.* ¶¶ 154–168, 187–197).  Plaintiff's 4AC also includes pages of allegations regarding statements made by individuals, including Plaintiff, at a City Council meeting regarding redevelopment, seemingly included to establish the City knew there were elderly and disabled people living at CTV and the assertion that the City Attorney should have told everyone present they could request a reasonable accommodation and did not; and that no accommodations were made.  (*Id.* ¶¶ 215–221.)  Plaintiff then goes on to describe the adoption of the redevelopment plan that closed CTV and alleges the City did not tell her or the private property managers of the parks that residents could seek reasonable accommodations.  (*Id.* ¶¶ 222–229.)

The 4AC then list more than twenty paragraphs of ordinances and state and federal statutes allegedly impacting RVs in general and Plaintiff specifically, before listing her causes of action.  (*Id.* ¶¶ 279–332.)  Plaintiff's 4AC asserts fifteen causes of action for violation of: (1) Substantive Due Process – Reckless Endangerment; (2) Cruel and Unusual Punishment; (3) Equal Protection; (4) Fair Housing Act of 1968; (5) California Constitution – Due Process and Equal Protection; (6) Bane Act; (7) Americans with Disabilities Act ("ADA"); (8) § 504 of the Rehabilitation Act; (9) Substantive Due Process (Enforcement of Repealed Ordinance); (10) Procedural Due Process (Use of Invalid

---

with four others, as residing at CTV in violation of a Stipulated Judgment.  (Doc. 97-9 at 9–10.)  It first references CTV's failure to comply with Paragraph 8 of the Stipulated Judgment as "prohibit[ing] the continuous presence of any persons on the property for more than six consecutive months."  (*Id.* at 9.)  It then goes on to state that "[t]his requirement reflects the regulations applicable to [CTV].  These regulations are found in Resolution 2654 (dated November 5, 1947) and Ordinance 2584 … ."  (*Id.*)

6

3:18-cv-02721-RBM-DEB

Ordinance Without Notice or Opportunity to Challenge); (11) Abuse of Power (Fourteenth Amendment Substantive Due Process); (12) *Monell*; (13) Abuse of Process; (14) Negligence/Gross Negligence; and (15) Systemic Violation of Federal Civil Rights through Discriminatory Policy or Practice.  (*Id.* ¶¶ 333–473.)

### B.    Procedural History

This case was initially filed on December 3, 2018.  (Doc. 1.)  Plaintiff filed an amended complaint on May 5, 2019 (Doc. 24) and a Second Amended Complaint ("SAC") on July 15, 2019 (Doc. 29).

The City moved to dismiss the SAC, and on May 20, 2020, this Court[5] issued an Order granting the City's motion. (Doc. 42.)  The Court dismissed Plaintiff's claims under Civil Code § 12955 and Ordinance No. 20968 without leave to amend based on futility because, among other reasons, neither applied to the City.  (*Id.* at 7–8.)  The Court also dismissed Plaintiff's Equal Protection, Fair Housing Act, and ADA claims.  (*Id.* at 3–7.)  Among other deficiencies, the Equal Protection claim failed to "allege[] selective treatment 'was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  (*Id.* at 4 (quoting *Crowley v. Courville*, 76 F.3d 47, 52–53 (2nd Cir. 1996)).)  The Fair Housing Act claim was dismissed for a number of reasons, including that Plaintiff did not allege the City denied her a reasonable accommodation or explain how the six-month rule, applicable to everyone, discriminated against those with disabilities beyond general allegations "that moving takes a lot of work and that is difficult for people with disabilities."  (*Id.* at 4–5.)  Similarly, on Plaintiff's ADA claim, the Court found the conduct alleged was facially neutral, not discriminatory, and there was no "factual support that there is disparate impact."  (*Id.* at 6.)  "But appearing that amendment would not be futile for

---

[5] Before the appeal, this case was before a different judge in this District.  The case was transferred to the undersigned (Doc. 78) when the Ninth Circuit's decision was issued remanding the case.

3:18-cv-02721-RBM-DEB

Plaintiff's Equal Protection Clause claim, Fair Housing Act claim, and ADA claim, the Court [granted] Plaintiff leave to amend *as to those claims only*." (*Id.* at 8 (emphasis added).)

After three extensions of time (Docs. 43–48), Plaintiff's Third Amended Complaint ("TAC") was filed on October 7, 2020 (Doc. 49), and the City again moved to dismiss (Doc. 50). The Court's order granting the City's motion struck five new claims Plaintiff added in violation of the Court's prior order[6] and found Plaintiff failed to state a claim as to the three claims she was permitted to amend, i.e., her Equal Protection, Fair Housing Act, and ADA claims. (Doc. 64 at 4–9 (dismissing these three claims).) In dismissing the Equal Protection claim in Plaintiff's TAC without leave to amend, the Court relied on its prior reasoning that "Plaintiff again failed to present factual allegations that the City based its enforcement of the Ordinance on race, religion, or exercise of constitutional rights." (*Id.* at 4–5.) On Plaintiff's Fair Housing Act claim, the Court explained that while Plaintiff's TAC referenced reasonable accommodations, they "were submitted to Plaintiff's landlord—not to the City" and Plaintiff's TAC still lacked any allegation she requested a reasonable accommodation from the City that was refused. (*Id.* at 5–6.) The Court also explained that the TAC lacked necessary allegations to establish a discriminatory effect on those with disabilities as would be necessary to plead a disparate impact claim. (*Id.* at 6–7.) Similarly, the ADA claim was also dismissed again because "[o]ther than her own conjecture, Plaintiff presents no facts or statistics relevant to buttress her otherwise speculative claim that disabled persons are disproportionately burdened by the Ordinance because they incur more costs with relocation than non-disabled persons. (*Id.* at 8–9.) The Court found leave to amend would be futile and not serve the interests of

---

[6] The new claims she added alleged violations of: (1) substantive due process; (2) cruel and unusual punishment; (3) the California Constitution; (4) the Bane Act; and (5) § 504. (Doc. 64 at 3 (identifying new causes of action and striking them "as noncompliant with the Court's prior order.")

3:18-cv-02721-RBM-DEB

justice because "Plaintiff's pleadings remain[ed] deficient despite having repeated opportunities and extensions of time to amend her complaint over the course of nearly three years." (*Id.*) Plaintiff filed a Notice of Appeal on August 25, 2021. (Doc. 68.)

Following briefing and oral argument on her appeal, the Ninth Circuit vacated and remanded the case to this Court with instruction that Plaintiff be granted leave to amend. *Eulitt*, 2024 WL 2350642, at *1. The court explained that "[f]or the first time on appeal, the City contends that it repealed the ordinance originating the Six-Month Rule in 1954, decades before the events alleged in Eulitt's complaint." *Id.* "Because the City's belated contention dramatically altered the nature of the issues on appeal, [the court] vacate[d] the district court's order and remand[ed] for the district court to consider these issues in the first instance." *Id.* The court explicitly ordered that "[t]he district court shall grant Eulitt additional leave to amend if she seeks it." *Id.* In accordance with that direction, the Court set a deadline for Plaintiff to indicate whether she sought to amend (Doc. 82), and she indicated she did seek to amend (Doc. 83).

The Court set a December 10, 2024 deadline for Plaintiff to file her 4AC in an order denying a request for appointment of counsel. (Doc. 84.) The order denying appointment of counsel explained, among other reasons, that Plaintiff had not established the exceptional circumstances necessary for appointment of counsel. (*Id.* at 3–4.) She had not shown a likelihood of success on the merits given she had two prior complaints that were dismissed and it appeared that the Ninth Circuit's remand, with instruction to allow her amend, stemmed primarily from the City's new argument regarding O-2584, rather than Plaintiff's likelihood of success on the merits of any of her claims. (*Id.* at 4.) The Court additionally explained that Plaintiff's attempt to bring this case as a class action did not make it sufficiently complex because if that bare assertion were sufficient, every pro se plaintiff would assert class allegations to obtain appointment of counsel at no expense. (*Id.* at 3–4.)

The Court then granted in part a series of extension requests from Plaintiff collectively extending the December 10, 2024 deadline to amend to April 18, 2025. (Doc.

3:18-cv-02721-RBM-DEB

88, 90, 94.) Plaintiff's third request for extension of time included another request for appointment of counsel (Doc. 92) that was denied because there had been no change in the case or circumstances since the Court's previous denial of appointment of counsel, i.e. no change in complexity or likelihood of success on the merits (Doc. 94 at 2–3).

Plaintiff filed her 4AC on April 18, 2025. (Doc. 96.) Plaintiff's 4AC is 485 paragraphs and 115 pages long (Doc. 96) without the 383 pages of attached exhibits separately docketed (Doc. 97). With the 4AC, Plaintiff attempts to add two additional plaintiffs as well as the Mayor of San Diego and the City Council as defendants and numerous additional claims not previously asserted. (Doc. 96 ¶¶ 14, 17, 20.)

## II.   DISCUSSION

The Court **DENIES** Plaintiff's Motion to Stay (Doc. 102) because the only basis for the stay is Plaintiff's inaccurate assertion that her Motion for Appointment of Counsel and Motion to Certify a Class are threshold issues that must be ruled on before Plaintiff responds to the City's Motion to Strike and Motion to Dismiss.

As discussed further below, the Court **GRANTS** the City's Motion to Strike (Doc. 100) and Motion to Dismiss (Doc. 101) for lack of opposition and based on Plaintiff's failure to comply with Federal Rule of Civil Procedure 8. Plaintiff's most recent Motion to Appoint Counsel (Doc. 102-2–102-5) is **DENIED** because, taking into account her likelihood of success on the merits and her ability to articulate her claims in light of the complexity of the legal issues involved, Plaintiff is not entitled to appointment of counsel in this civil case. (Doc. 84 at 2–4 (initial denial of request for appointment of counsel).) Plaintiff's Motion to Certify a Class (Doc. 103) is **DENIED** because Plaintiff cannot represent others, including class members, as a pro se litigant. The 4AC is **DISMISSED** with leave to file an amended complaint.

### A.   Lack of Opposition

"Civil Local Rule 7.1(e)(2) requires the party against whom a motion is filed to file an opposition or statement of non-opposition no later than fourteen days prior to the motion's noticed hearing." *Scottsdale Ins. Co. v. Hamerslag*, Case No.: 23-CV-780 JLS

3:18-cv-02721-RBM-DEB

(AHG), 2023 WL 7434967, at *2 (S.D. Cal. Nov. 9, 2023) (citing CivLR 7.1(e)(2)).  Civil Local Rule 7.1(f)(3)(c) indicates that "[i]f an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1(e)(2), that failure may constitute a consent to the granting of a motion or other request for ruling by the court."  CivLR 7.1(f)(3)(c); *see also Scottsdale Ins. Co.*, 2023 WL 7434967, at *2.

Here, Plaintiff failed to file an opposition or statement of non-opposition to either motion.  She affirmatively did the opposite.  As noted above, while Plaintiff filed what she captioned "Conditional Opposition to Defendant's Motion to Dismiss" (Doc. 104) and "Conditional Opposition to Defendant's Motion to Strike" (Doc. 105), neither filing addresses the City's very substantive and thorough motions seeking to strike portions of and dismiss the entire 4AC.  Plaintiff has essentially filed two demands that the Court rule on her motions to appoint counsel and certify a class and delay consideration of the City's properly and timely filed motions.  Neither filing is an opposition or a statement of non-opposition.  In this respect, Plaintiff has "failed to file the papers in the manner required by Civil Local Rule 7.1(e)(2)."

"Courts regularly apply Civil Local Rule 7.1(f)(3)(c) to summarily grant unopposed motions."  *Scottsdale Ins. Co.*, 2023 WL 7434967, at *2 (citing *United States v. Warren*, 601 F.2d 471, 473 (9th Cir. 1979) (per curiam)) (collecting cases).  It "is designed to relieve the court of the burden of reviewing the merits of a motion without the benefit of full briefing, because such a review requires a significant amount of scarce judicial time."  *Id.* (citing *Luna v. U.S. Bank, N.A.*, No. 09-CV-2807-L NLS, 2011 WL 1099795, at *1 (S.D. Cal. Mar. 24, 2011)).  Additionally, the Ninth Circuit has found that a party's "[f]ailure to follow a district court's local rules"—including specifically a local rule that considers the failure to file an opposition to a motion a consent to the granting of the motion—may be a proper ground for dismissal.  *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (approving dismissal for lack of opposition under Nevada local rule that stated that "the failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion.").  The court explained that

3:18-cv-02721-RBM-DEB

"[b]efore dismissing the action, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases o[n] their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).[7]

Here, the Court is granting the Motion to Strike and Motion to Dismiss for lack of opposition but is providing Plaintiff another opportunity to amend to state a plausible claim.[8]  With the granting of the City's motions resulting in dismissal with leave to amend rather than without leave to amend, the Court considers the Ghazali factors based on that ruling and finds at least three of the five factors favor dismissal and two others are neutral.

The Court's need to manage its docket, the risk of prejudice to the defendant and the availability of less drastic sanctions all favor granting the motions for lack of opposition. Giving Plaintiff the benefit of arguments she did not make and an analysis on issues she did not dispute is prejudicial to the City, a waste of judicial resources, and not effective management of the Court's docket.  The availability of less drastic sanctions also favors

---

[7] The Court notes that it is not clear that district courts are always required to explicitly consider these factors when the resulting dismissal is with leave to amend.  *Ghazali* was a dismissal followed by an entry of judgment, *Ghazali*, 46 F.2d at 54, and the case *Ghazali* relies on for consideration of these factors was a dismissal with prejudice.  *Henderson*, 779 F.2d at 1423.  Here, the Court is dismissing with leave to amend, a must less drastic action than a dismissal with prejudice.  However, the Court has considered the factors as part of its exercise of discretion in applying the Civil Local Rules.  *See Scottsdale Ins. Co.*, 2023 WL 7434967, at *2 ("A district court's exercise of discretion pursuant to Civil Local Rule 7.1(f)(3)(c) is informed by the factors outlined in *Ghazali v. Moran*.").

[8] The Court is not inclined to dismiss *without* leave to amend based on a lack of opposition given the procedural posture of this case.  In remanding this case, the Ninth Circuit noted the City's belated contention regarding O-2584 "dramatically altered the nature of the issues on appeal" and ordered the Court to allow Plaintiff an opportunity to amend.  *Eulitt*, 2024 WL 2350642, at *1.  The Court has complied in giving Plaintiff an opportunity to amend as well as numerous extensions to do so.  However, given this procedural history, the Court provides Plaintiff another opportunity to amend her claims.

12

3:18-cv-02721-RBM-DEB

dismissal because there is no less drastic action the Court can take than dismissal with leave to amend when Plaintiff fails to respond to a thorough Motion seeking dismissal of all 15 of her claims.

The pubic policy favoring disposition on the merits and the public's interest in expeditious resolution of litigation are neutral.  While a dismissal for lack of opposition is not on the merits, reaching a merits resolution on the City's substantive arguments is not possible when Plaintiff refuses to address the City's arguments for dismissal.  Similarly, the Court cannot achieve the public's interest in expeditious resolution of litigation if the party responsible for pursuing this case, Plaintiff, fails to address substantive motions seeking dismissal of her entire case.

Accordingly, the Court **GRANTS** the City's Motion to Strike and Motion to Dismiss the 4AC for lack of opposition under Civil Local Rule 7.1(f)(3)(c) and finds the *Ghazali* factors favor dismissal.  The 4AC is **DISMISSED** with leave to amend.

While the Court is granting Plaintiff leave to amend her claims, she is not permitted to add any plaintiffs if she chooses to amend.  The City's Motion to Strike, that has been granted for lack of opposition, includes striking the two newly added plaintiffs, allegations specific to them, and the class allegations (Doc. 100 at 2) because, as the City accurately explains, "[t]he statutory privilege to represent oneself pro se is personal to the litigant and does not extend to other parties or entities." (Doc. 100-1 at 4 (citing *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)).)  "[C]ourts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon*, 546 F.3d at 664–65 (collecting cases finding pro se plaintiffs may not pursue class actions, qui tam actions, shareholder derivative actions, or actions on behalf of an estate or trust).  Accordingly, while Plaintiff may amend her claims, she may not include these stricken plaintiffs or any others.

**B.     Federal Rule of Civil Procedure 8**

The City's Motion to Dismiss seeks dismissal of Plaintiff's 4AC for failing to comply with Federal Rule of Civil Procedure 8. (Doc. 101-1 at 14–16.) Noting the volume

3:18-cv-02721-RBM-DEB

of claims, including seven of which were not previously asserted in this case and the length of Plaintiff's 4AC, the City argues the 4AC should be dismissed on this procedural ground alone. (*Id.*) "Under Rule 8(a), a pleading must be '(1) a short and plain statement of the grounds for the court's jurisdiction … ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief' and clearly and fully set forth 'who is being sued, for what relief, and on what theory, with enough detail to guide discovery.'" *Giannini v. Cnty. of Sacramento*, No. 2:21-CV-00581-KJN, 2023 WL 6279437, at *1 (E.D. Cal. Sept. 26, 2023) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)). "Rule 8(d)'s requirement that each averment of a pleading be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6).'" *Giannini*, 2023 WL 6279437, at *1 (quoting *McHenry*, 84 F.3d at 1178).

The 4AC does not comply with Rule 8. It is unnecessarily excessive in overall length, including detailed historical information untethered to any claim, long lists of ordinances and statutes separate from Plaintiff's causes of action, and lengthy detailed summaries, for example, of Plaintiff's personal and medical history (4AC ¶¶ 249–260, 269–278) and of a single City Council meeting (*id.* ¶¶ 215–221). Additionally, Plaintiff seems to repeat causes of action without a distinction from prior causes of action, particularly as to the new claims. (4AC ¶¶ 333–473.) While the Court understands that Plaintiff is attempting to establish a history of enforcement of the ordinance given the City's repeal argument on appeal and is likely detailing her health issues for purposes of establishing she has a qualifying disability or the harms claimed as a result of enforcement, the length and detail make fully responding to the 4AC almost impossible. Additionally, Plaintiff attempts to include as part of her 4AC almost 400 pages of exhibits with only a few—like the June 22, 2017 letter regarding compliance with a Stipulated Judgment noted above (*see supra* note 4)—even relevant to the allegations of the 4AC. Additionally, it appears that only a few of these exhibits might qualify for consideration as part of a

complaint. *See* Federal Rule of Civil Procedure 10(c) (addressing exhibits attached to pleadings and permitting only "[a] copy of a written instrument"); *see also Mora v. City of Chula Vista*, Case No. 20cv779-GPC(AGS), 2021 WL 1165054, at \*7 (S.D. Cal. Mar. 26, 2021) ("A written instrument within the meaning of Rule 10(c) is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy, or security agreement.") (citations omitted); *Montgomery v. Buege*, No. CIV. 08-385 WBS KJM, 2009 WL 1034518, at \*3 (E.D. Cal. Apr. 16, 2009) ("[W]itness affidavits and other exhibits containing largely evidentiary material typically do not fall within Rule 10(c)'s category of 'written instruments'").

The 4AC does not provide a "short and plain statement" and it is certainly not "simple, concise, and direct." Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 8(d). Accordingly, in addition to granting the City's Motion to Dismiss for lack of opposition from Plaintiff, the Court also **DISMISSES** the 4AC for failing to comply with Rule 8.

### C.    Rule 12(b)(6)

While the Court grants the City's motions for lack of opposition and because Plaintiff's 4AC fails to comply with Rule 8, the Court also very briefly notes, for purposes of amendment, that Plaintiff must attempt to cure the deficiencies of her 4AC that have been identified in the City's Motion to Dismiss by either clarifying her allegations to state plausible claims or removing duplicative or impermissible causes of actions.

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "In sum, for a complaint to

survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

As explained above (*see supra* II.A), the Civil Local Rule permitting the granting of an unopposed motion "is designed to relieve the court of the burden of reviewing the merits of a motion without the benefit of full briefing, because such a review requires a significant amount of scarce judicial time." *Scottsdale Ins. Co.*, 2023 WL 7434967, at *2 (citing *Luna*, 2011 WL 1099795, at *1). While the Court has exercised its discretion to grant the City's motions under Civil Local Rule 7.1(f)(3)(c) based on the lack of opposition from Plaintiff, the Court notes that any amended pleading should attempt to address the many ways, identified in the City's Motion to Dismiss (Doc. 101-1) that Plaintiff fails to state her claims under Rule 12(b)(6)'s plausibility standard. For example, Plaintiff's second cause of action for cruel and unusual punishment simply cannot proceed absent an allegation Plaintiff suffered a criminal conviction and sentence. (*See* Doc. 101-1 at 18–19.) Additionally, as raised in the unopposed Motion to Dismiss, among other issues, Plaintiff could not generally proceed on her newly added fifth and sixth causes of action under the California Constitution and the Bane Act without allegations that she presented a government claim or allegations supporting a legally valid exception to the government claim requirement. (Doc. 101-1 at 25–27.) These and other deficiencies identified in the City's Motion to Dismiss (Doc. 101-1) must be addressed in any amended pleading.[9]

///

///

---

[9] The Court also notes that if Plaintiff amends and the City again raises mootness based on the repeal of the O-2584 (Doc. 101-1 at 13–14), the City's must address how the repeal of O-2584 seventy years ago moots claims based on the City's purported enforcement of it, or something akin to it, and any claims based on the potential unlawfulness of simply enforcing a repealed ordinance against Plaintiff.

3:18-cv-02721-RBM-DEB

### D.    Appointment of Counsel

Plaintiff asserts she should have counsel appointed because she "cannot adequately represent a putative class under federal law, and has made repeated, good faith efforts to obtain legal representation without success." (Doc. 102-2 at 2.)  She additionally argues based on "[t]he complexity of the legal issues, the scope of potential relief, and the potential prejudice to absent class members," that the Court should appoint counsel at this stage. (*Id.*)  And, she argues the Ninth Circuit's remand of this case suggests she is likely to succeed on the merits.  (*Id.* at 4–5.)

As the Court explained in denying Plaintiff's first request for appointment of counsel, "[g]enerally, a person has no right to counsel in civil actions."  (Doc. 84 at 2 (quoting *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009)).)  Congress has authorized courts to appoint counsel for indigent litigants "only under exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel.").  "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'"  *Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).  Only rarely will a federal court find a case to be so complex that it is appropriate to appoint counsel for a civil litigant who faces no loss of liberty in the controversy at hand.  *See Dotson v. Doctor*, No. 1:14-cv-00093-LJO-SKO, 2014 WL 2208090, at *1 (E.D. Cal. May 28, 2014) ("[c]ounsel is appointed in civil cases only rarely, if exceptional circumstances exist"); *see also Schwartzmiller v. Roberts*, Civ. No. 93-1276-FR, 1994 WL 48967, at *2 n.1 (D. Or. Feb. 11, 1994).

Here, Plaintiff has not established that exceptional circumstances warrant appointment of counsel.  Plaintiff has not demonstrated the complexity of the issues involved is sufficient to require appointment of counsel.  Plaintiff's preference to bring this case as a class action does not warrant or require this Court to appoint counsel.  As the Court noted in the prior denial of appointment of counsel, if a pro se plaintiff's preference

17

to bring a class action were sufficient "to establish the complexity of a case for purposes of appointment of counsel, every pro se plaintiff would simply assert class allegations in an attempt to obtain appointment of counsel." (Doc. 84 at 3.) While the Court understands that Plaintiff could benefit from the appointment of counsel, she has that in common with every pro se litigant. She has not established her case is sufficiently complex to warrant appointment. *See Wilborn*, 789 F.2d at 1331 ("[i]f all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex legal issues").

Additionally, the Court cannot find Plaintiff has shown a likelihood of success on the merits. As detailed above, her SAC was dismissed with two of the five claims dismissed without leave to amend and three others dismissed with leave to amend. (*See supra* I.B.) But when she amended, all her claims were dismissed without leave to amend because she failed to correct the deficiencies of the three claims she was permitted to amend. (*Id.*) And while Plaintiff points to the remand of this case as a sign of her likelihood of success on the merits, the very limited ruling from the Ninth Circuit suggests that the remand was primarily based on the City raising a completely new argument on appeal that was never previously raised. *See Eulitt*, 2024 WL 2350642, at *1 (remanding for "the district court to consider these issues, [the City's belated contention O-2584 was repealed in 1954], in the first instance" without addressing the merits of Plaintiff's claims). Even if they found she should be given an additional opportunity to amend unrelated to the City's new argument, a finding that further leave to amend is warranted is not equivalent to a finding she is likely to succeed on an amended pleading. And now Plaintiff has filed a 4AC that adds a litany of new claims that appear, based on the City's unopposed Motion to Dismiss, to suffer from significant pleading deficiencies. (*See* Doc. 101-1.)

Because Plaintiff has not demonstrated she lacks "the ability … to articulate [her] claims pro se in light of the complexity of the issues involved" or a likelihood of success on the merits, her Motion for Appointment of Counsel (Doc. 102-2–102-5) is **DENIED**. *Terrell*, 935 F.2d at 1017.

18

3:18-cv-02721-RBM-DEB

## E.   Class Certification

"The determination as to whether to certify a class is committed to the discretion of the district court." *Bouman v. Block*, 940 F.2d 1211, 1232 (9th Cir. 1991). "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). "Rule 23(a) requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation). Here, because the Court finds Plaintiff has not met the fourth requirement, adequacy of representation, the Court need not reach the additional requirements of Rule 23(a) or Rule 23(b).[10]

"The general rule establishing the right of an individual to represent oneself in all federal courts of the United States is contained in 28 U.S.C. § 1654." *Simon*, 546 F.3d at 664. It "is intended to provide individuals with equal access to the courts by permitting individuals to represent themselves." *Id*. "It is well established that the privilege to represent oneself pro se provided by § 1654 is personal to the litigant and does not extend

---

[10] The Court also notes that Plaintiff has not met other requirements for class certification under Rule 23(a) because, among other reasons, many of the allegations critical to her claims are relatively unique to her. For example, Plaintiff's claim that the City denied her a reasonable accommodation that she never requested from the City is premised on the idea that the City denied it because the City would have known she had a reasonable accommodation from her landlord by way of the City's access to her tenant file as part of its enforcement of the six-month rule and her tenant file included a letter regarding a reasonable accommodation from her landlord. Even putting aside the plausibility of this theory for Plaintiff's claims as an individual to find the City denied a reasonable accommodation, a similar factual basis is unlikely to exist for a sufficient number of class members Plaintiff improperly seeks to represent.

3:18-cv-02721-RBM-DEB

to other parties or entities." *Id.* (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)).  A plaintiff, "proceeding pro se and without counsel, [is] not qualified to act as [a] class representative [because] they are unable to fairly represent and adequately protect the interests of the class. *Smith v. Quigley*, No. 3:14-CV-05974-RBL-JRC, 2016 WL 3218804, at *2 (W.D. Wash. June 10, 2016) (collecting cases); *McShane*, 366 F.2d at 288 (finding pro se plaintiff could not represent anyone other than himself); *see also McZeal v. JPMorgan Chase Bank, N.A.*, 735 F. App'x 913, 916 (9th Cir. 2018) (finding district court "properly struck the complaint's class allegations because a plaintiff proceeding pro se may not pursue claims on behalf of others); *see also Grayton v. United States*, 514 F. App'x 645, 646 (9th Cir. 2013) (affirming summary judgment on claims on behalf of a putative class "because pro se litigants have no authority to represent anyone other than themselves.").

Because Plaintiff is not qualified to represent a class, she has failed to show she meets the requirements for class certification under Rule 23(a)(4).  Accordingly, Plaintiff's Motion for Class Certification (Doc. 103) is **DENIED**.

### III.   CONCLUSION

The Motion to Certify Class (Doc. 103), Motion for Appointment of Counsel (Doc. 102-2–102-5), and Motion to Stay (Doc. 102) are **DENIED**.  The City's Motion to Strike (Doc. 100) and Motion to Dismiss (Doc. 101) are **GRANTED** and the 4AC is **DISMISSED with leave to amend**.  If Plaintiff elects to amend, the amended pleading must be filed no later than **May 29, 2026**.  The City's response to any amended pleading must be filed by **June 26, 2026**.

Additionally, the Court **ORDERS** the parties to contact the assigned Magistrate Judge to schedule an Early Neutral Evaluation Conference.[11]  They must contact the

---

[11] While Early Neutral Evaluation Conferences ("ENE") are generally not set until the filing of an Answer, a stage this case has yet to reach, the Court finds a settlement conference may be helpful in resolving this case, particularly given the recent change in the City's

3:18-cv-02721-RBM-DEB

Magistrate Judge's chambers no later than **April 10, 2026**.

**IT IS SO ORDERED.**

Dated:  March 25, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

position, this Court dismissal of the 4AC with leave to amend, and this Court's denial of class certification.  *See* CivLR 16.1 (allowing for ENEs to be set prior to the filing of an Answer).

21

3:18-cv-02721-RBM-DEB